ERIC A. SAVAGE, ESQ.
esavage@littler.com
GEIDA D. SANLATE, ESQ.
gsanlate@littler.com
MARLENE S. MURACO, ESQ. – CA BAR NO. 154240
mmuraco@littler.com
**LITTLER MENDELSON**
A Professional Corporation
One Newark Center – Eighth Floor
Newark, New Jersey 07102.5311
Telephone:  973.848.4700
Facsimile:   973.643.5626
Attorneys for Defendants
    Presidente U.S.A., Inc., Cerveceria Nacional Dominicana,
    Grupo Leon Jimenes, and Gevity HR, Inc.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE HONE,<br><br>            Plaintiff,<br><br>vs.<br><br>PRESIDENTE U.S.A., INC., CERVECERIA NACIONAL DOMINICANA, GRUPO LEON JIMENES, LTD., ADMINISTAFF, INC., GEVITY H.R., and PHILLIP MORRIS,<br><br>            Defendants. | Miscellaneous Case No. CV 08-8007  (HRL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH A SUBPOENA SERVED ON YAHOO!**<br><br>The Honorable Howard R. Lloyd, U.S.D.J.<br><br>Hearing Date:  July 22, 2008<br><br>Time: 10:00 a.m. |

---

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH A SUBPOENA SERVED ON YAHOO!

---

On the Brief:
    Eric A. Savage, Esq.
    Geida D. Sanlate, Esq.

## TABLE OF CONTENTS

<strong><u>Page</u></strong>

TABLE OF AUTHORITIES ................................................................................. ii

I.      INTRODUCTION ............................................................................... 1

II.     STATEMENT OF RELEVANT FACTS ............................................ 3

III.    ARGUMENT ........................................................................................ 6

      A.    Plaintiff Failed to Meet and Confer in Good Faith Prior to Filing
           This Motion ......................................................................... 6

      B.    Federal Discovery and Due Process Policies Mandate a Liberal Application
           of Discovery Interests in Evaluating Plaintiff's Privacy Interests ................. 7

           1.    Plaintiff's Privacy Concerns Must Be Balanced Against
                 The Public Interest in Disclosure ......................................... 7

           2.    Because the Communications Sought Are Relevant, Plaintiff's
                 Privacy Interests Are Outweighed by The State Interest of
                 Facilitating the Ascertainment of Truth and Defendant's Right
                 to A Fair Trial ...................................................................... 9

           3.    Defendants' Subpoena Does Not Violate the Electronic
                 Communications Privacy Act or Stored Communications Act ............... 11

           4.    Rather Than Quashing the Subpoena to Yahoo!, The Subpoena
                 Can Be Modified, the Electronic Communications Can Be
                 Inspected *In Camera,* and/or Plaintiff Can Obtain A Protective
                 Order As To The Privileged Communications ........................... 13

IV.     CONCLUSION ................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ceramic Corp. of Am. v. Inka Maritime Corp., Inc.,*
   163 F.R.D. 584 (C.D. Cal. 1995) ................................................................. 8

*Federal Trade Commission v. Netscape Communications Corp.,*
   196 F.R.D. 559 (N.D. Cal. 2000) .............................................................. 12

*Gonzalez v. Google, Inc.,*
   234 F.R.D. 674 (N.D. Cal. 2006) ........................................................ 13, 14

*Hickman v. Taylor,*
   329 U.S. 495 (1947) .................................................................................. 7

*In re Subpoena Duces Tecum to AOL, LLC,* 2008 U.S. Dist. LEXIS 39349 (E.D.
   Va. Apr. 18, 2008) ................................................................................. 12

*Mendez v. Superior Ct.,*
   206 Cal.App.3d 557 (1988) ........................................................................ 8

*Moskowitz v. Superior Court,*
   137 Cal.App.3d 313 (1982) ........................................................................ 8

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978) .................................................................................. 8

*Ragge v. MCA/Universal Studios,*
   165 F.R.D. 601 (C.D. Cal. 1995) ............................................................ 8, 9

*Theofel v. Farey-Jones,*
   359 F.3d 1066 (9th Cir. 2003) ................................................................. 12

*Weil v. Investment/Indicators Research & Mngt., Inc.,*
   647 F.2d 18 (9th Cir. 1981) ........................................................................ 8

## STATUTES

Electronic Communications Privacy Act,
   18 U.S.C. § 2701 *et seq.* Section 2701(a) ........................................... 11, 13

N.J.S.A. § 10:5-1, *et seq* ........................................................................... 1

## RULES

Fed.R.Civ.P. 45(c) ..................................................................................... 6

## I.    INTRODUCTION

In this sexual harassment case, plaintiff's employer, Presidente U.S.A., Inc. ("Presidente") received a copy of an electronic communication between Plaintiff Jacqueline Hone ("Plaintiff") and Leonidas Marti, her alleged harasser ("Mr. Marti") after plaintiff had filed her Complaint. Through Yahoo!'s Instant Messenger service, Plaintiff wrote to Mr. Marti:

> I will admit to anyone who asks...you and I have never had an intimate relationship because it is the truth 100%. Never did I receive favors or special treatment at work because of your feelings towards me. Also, you explained if it was up to you I would have been the first to move to Miami, but it was the others (Franklin Ricky and Felix) that would never allow my transfer because I was on to the corruption and would always speak up. (Savage Dec., Ex. D.)

Plaintiff's electronic communication with Mr. Marti calls into question the veracity of her claims of sexual harassment since the Complaint alleges that Mr. Marti, as her supervisor, subjected plaintiff to *quid pro quo* sexual harassment during her employment with Presidente and that she was denied a transfer to the Miami office because she rejected Mr. Marti's advances.

Plaintiff this action against Presidente and against Cerveceria Nacional Dominicana ("Cerveceria"), E. Leon Jimenes, sued herein as Grupo Leon Jimenes ("Grupo"), Administaff, Inc. ("Administaff"), Gevity HR, Inc. ("Gevity"), and Phillip Morris, alleging hostile work environment sexual harassment, *quid pro quo* sexual harassment and retaliation under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq. ("NJLAD"), constructive discharge, and emotional damages. She bases her claim on the alleged harassing conduct of eight employees, some of whom left the companies' employ years ago and are no longer within Defendants' control, and in some

cases, outside the United States. Plaintiff has also claimed that an additional forty-four individuals possess knowledge of the relevant facts of her claims.

Having received copies of plaintiff's electronic communication with Mr. Marti, Defendants served the subpoena on Yahoo! seeking disclosure of electronic communications that they believe will have a major bearing on plaintiff's claim. The electronic communications between plaintiff and Mr. Marti highlight the compelling need for disclosure of her communications with not only Mr. Marti, but also with the other seven alleged harassers and the forty-four individuals whom she has identified as witnesses of the alleged harassment.

Plaintiff's motion to quash the subpoena should be denied on several grounds. First, she has failed to meet the requirement of FRCP 37(a)(1), Local Rule 37-1(a) of this Court and Local Rule 37.1(a) of the Local Rules of the United States District Court for the District of New Jersey, all of which require that she confer in an attempt to resolve this dispute without involving the Court. Indeed, counsel has violated this principle twice, once when the original motion was filed in New Jersey and again in this Court. Therefore, this motion should be denied without further consideration.

The communications sought from Yahoo! are directly relevant to the issues in this case and non-privileged. Without these records, Defendants will be improperly denied information which is necessary to probing the truth of plaintiff's allegations and her communications with possible witnesses. Since she chose to place the events in dispute and to put her emotional condition in issue, plaintiff cannot be allowed to close off avenues of legitimate inquiry. Indeed, Defendants will be irreparably prejudiced if they are not allowed to obtain disclosure of plaintiff's representations and communications

about her employment experience at Presidente and emotional condition allegedly resulting from those events.

However, if this Court nonetheless decides to consider the motion, it should still be denied because the disclosure will not offend the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.* Moreover, if the Court finds the subpoena too broad, it retains the power to modify and narrow the request. In addition, Plaintiff's privacy interests can be protected by holding an *in camera* review of the communications, issuing a protective order as to privileged communications, if any, or even modifying the subpoena to prevent disclosure of privileged or unrelated information.

Accordingly, the within motion should be denied, or in the alternative, the subpoena modified to limit it to the disclosure of communications between plaintiff and the fifty-two individuals whom she has identified in her discovery responses as having knowledge of the facts.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Plaintiff's Pleadings and Discovery Responses Establish The Direct Relevancy of the Communications Sought

On October 18, 2007, plaintiff filed a Complaint against her former employer Presidente, and against Grupo, Cerveceria, Administaff, Gevity, and Phillip Morris, for alleged sexual harassment and retaliation. Plaintiff alleges that Plaintiff was harassed throughout her employment with Presidente, which lasted from August 2001 until her resignation on July 20, 2007. (Complaint ¶¶ 8, 11, 44; Exhibit A). In the complaint Plaintiff identified by name only one alleged harasser, i.e., Mr. Marti.

Months into the litigation, in her Rule 26 disclosures, plaintiff identified fifty-seven individuals as persons likely to have discoverable information about the alleged

harassment and her claims. (Plaintiff's Disclosures Pursuant to Rule 26, pp. 2-7; Exhibit B). Thereafter, as part of her responses to Gevity's Interrogatories, plaintiff identified fifty-two individuals as persons possessing knowledge about her claims, eight of whom were now being identified as alleged harassers. (Plaintiff's Responses to Gevity's First Set of Interrogatories, pp. 1-22; Exhibit C). Of the fifty-two individuals, at least twenty-six are either third party witnesses or former employees of the parties in this litigation, and not within the control of any defendant. (Savage Dec., Ex. E; Hernandez Declaration). Of the eight alleged harassers, four are no longer employed by Presidente. (*Id.*).

On March 18, 2008, during the Rule 16 Status Conference with the Honorable Esther Salas, U.S.M.J., plaintiff's counsel advised that Plaintiff planned to retain experts to testify about plaintiff's alleged emotional distress and the exacerbation of a medical condition. Although the Complaint mentions that plaintiff underwent a lumpectomy few months prior to her resignation (Complaint, ¶ 37, Exhibit A), neither the Complaint nor plaintiff's discovery responses have specified the medical condition allegedly exacerbated by the alleged harassment.

### B.   Plaintiff's Communications With One of the Alleged Harassers and Her Discovery Responses Compelled the Issuance of the Subpoena

After the action began, Presidente received copies of electronic communications exchanged between plaintiff and Mr. Marti, one of the alleged harassers. (Exhibit D). Mr. Marti left Presidente's employ in or about June 2005. (Exhibit E). On March 7, 2008, plaintiff served her Rule 26 disclosures identifying the fifty-seven individuals alleged to possess knowledge of the relevant facts. (Exhibit B). In light of plaintiff's

communications with Mr. Marti and her Rule 26 disclosures, Presidente and Gevity issued the instant subpoena on Yahoo! on or about April 3, 2008.  (Exhibits F, G).

**C.**  **From the Onset, Plaintiff Is Advised That Disclosure of The Electronic Communications Will Not Be Made Without Her Express Consent**

It is our understanding that Yahoo! requires that the subscriber provide consent to the disclosure by executing a User Consent Form exclusive to Yahoo!.  In turn, the User Consent Form would be provided by Yahoo! only with the service of a subpoena issued by this Court.

On March 26, 2008, we advised plaintiff's counsel of our intention to serve the subpoena and the need for execution of the consent form.  (Savage Correspondence; Exhibit F).  When we served the subpoena on Yahoo!, by letter dated March 31, 2008, we asked Yahoo! to send us the consent form for execution by plaintiff.  (Savage Correspondence; Exhibit G).  By letters dated March 28 and April 15, 2008, plaintiff's counsel advised Yahoo! of its intention to file the within motion and requesting that Yahoo! not produce any documents, "unless otherwise directed by the Court."  (Hager Correspondence, attached as Exhibit H).  To date, Yahoo! has not provided the User Consent Form required for disclosure of the subject electronic communications.

**D.**  **Plaintiff's First Motion to Quash the Subpoena**

On April 16, 2008, without first meeting and conferring to attempt to resolve the dispute as required by Federal Rule of Civil Procedure 26(c) and Local Rule 37.1(a)(1), Plaintiff filed an "emergency" motion before the District Court of New Jersey to quash the subpoena.  (Letter Brief without attachments; Exhibit I).  We responded two days later and advised the Court that the motion was "not ripe for decision because plaintiff [had] failed to abide by the requirements of Local Rule 37.1."  (Exhibit J).  In a telephone

-5-

conference held on May 12, Magistrate Judge Salas declined to hear the motion and recommended that plaintiff re-file it with proper notice only after he met and conferred with our office to attempt to resolve this dispute. To date, plaintiff's counsel has failed to comply with the meet and confer requirement.

## III.    ARGUMENT

### A.    This Motion Should Be Dismissed Because Plaintiff's Counsel Failed to Meet and Confer In Good Faith Prior to Filing This Motion

In light of Magistrate Judge Salas' directive that plaintiff confer about possible resolution of the discovery issue before involving the Court, the present motion is tantamount to willful disregard of the Federal Rules of Civil Procedure and Magistrate Salas' authority. Pursuant to Rule 26(c), a motion to prevent discovery, including a motion addressed to a document subpoena, must be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action...."

Here, counsel cannot provide such a certification because he has once again involved the Court without first complying with this "meet and confer" requirement. At no time has our office refused to meet and confer this dispute. To the contrary, in response to plaintiff's first motion to quash, we wrote to explain the relevancy of the documents being sought and suggested that if "plaintiff has a proposal about how certain privacy or other issues might be addressed, we are prepared to discuss them in good faith." (Exhibit N).

For example, as discussed below, the subpoena could be modified to protect privileged communications; the disclosures can be inspected *in camera* by the Court; or plaintiff may apply for a protective order to protect all privileged information. From the

onset, we have expressed a willingness to meet and confer about this dispute. Therefore, in light of (a) Magistrate Judge Salas' recommendation, (b) Yahoo!'s requirement that a consent form be executed before any disclosures are made, (c) our willingness to discuss this dispute, and (d) the alternatives available to plaintiff, counsel for plaintiff cannot in good faith argue that plaintiff's right to privacy is under imminent threat of violation such that complying with the meet and confer requirement would be futile.

This Court's Civil Local Rule 37-1(a) clearly denotes that "[t]he Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to F.R.Civ.P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." Therefore, this Court should not even consider this motion and should order counsel to attempt to resolve this dispute as required by the Rules.

**B.    Federal Discovery and Due Process Policies Mandate Discovery of Relevant Information to Afford Defendants a Fair Trial**

**1.    Plaintiff's Privacy Concerns Must Be Balanced Against The Public Interest in Disclosure.**

Plaintiff's argument that the subpoenaed records are protected by her right to privacy ignores the federal policy favoring broad and liberal discovery. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their disputes." *Ceramic Corp. of Am. v. Inka Maritime Corp., Inc.*, 163 F.R.D. 584, 587 (C.D. Cal. 1995). Because rules which have the effect of withholding relevant evidence from the fact-finder conflict squarely with that purpose, such rules must be narrowly construed. *See Weil v. Investment/Indicators Research & Mngt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *Mendez v. Superior Ct.*, 206 Cal.App.3d 557, 566 (1988)

(the filing of a lawsuit waives any right to protect disclosure of information "relevant to issues in this case and essential to its fair resolution of the lawsuit").

Indeed, Rule 26(b) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (employment discrimination case).

In California, the constitutional right of privacy is "not an absolute right, but a right subject to invasion depending upon the circumstances." *Ragge*, 165 F.R.D. at 604. The right to privacy must be weighed against the compelling "state interest of facilitating the ascertainment of truth in connection with legal proceedings," *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316 (1982), and may be invaded for purposes of litigation and to the extent necessary for a fair resolution of the lawsuit. *Ragge*, 165 F.R.D. at 604-605. It is generally known that "[l]itigation has a tendency to make public the sort of information that individuals otherwise would prefer to keep private. Public disclosure, in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependant on accuracy and truth." *Id.* at 605.

2. **Because the Communications Sought Are Relevant, Plaintiff's Privacy Interests Are Outweighed by The State Interest of Facilitating the Ascertainment of Truth and Defendants' Right to A Fair Trial.**

Contrary to plaintiff's claims, the communications sought are directly relevant and, indeed, essential to a fair resolution of this matter and to Defendants' ability to prepare and mount a defense.

Plaintiff alleges that she was continuously harassed for the six years she was employed by Presidente. She further alleges that she was denied employment opportunities and equal pay in retaliation for her complaints about the sexual harassment. She claims that Presidente engaged in conduct that created "intolerable conditions," forcing her to terminate her employment and causing her to suffer emotional distress.

Although she has identified fifty-two individuals as allegedly possessing knowledge about her claims (eight of whom are alleged harassers), she has not identified a single document establishing that, any time prior to April 2007, she registered any complaint about her alleged mistreatment. Instead, plaintiff intends to rely on the testimonies of some (or all) of the forty-four alleged witnesses. Without the communications sought herein, defendants will not be able to examine plaintiff or her witnesses fully and completely and will be deprived of their testimonies and neither the Court nor the defendants will have a fair opportunity to ascertain the truth of plaintiff's allegations.

Plaintiff's communications with the fifty-two individuals regarding her employment with Presidente bear directly on the questions of whether the alleged sexual harassment occurred, whether her employment with Presidente was so intolerable as to support her allegations of retaliation and constructive discharge, and her claim of

emotional distress. For example, the Complaint alleges incidents of sexual harassment dating back to 2001, which suggests that plaintiff intends to rely on these allegations at trial. Because individuals who may possess knowledge about these incidents are no longer within Presidente's control, and may not even be in the country, defendants will be gravely prejudiced if defendants are denied the opportunity to examine plaintiff's communications with these individuals and uncover statements or admissions which may undercut plaintiff's present assertions. How plaintiff represented her employment experience to them is directly relevant to the issues that she has raised in this action and defendants must be allowed the opportunity to examine her representations to the alleged harassers and witnesses.

Additionally, the communications sought are relevant to plaintiff's emotional distress claims. For example, the Complaint alleges that plaintiff "underwent a lumpectomy" in May 2007. (Complaint ¶ 37, Exhibit A). Plaintiff apparently intends to testify at trial that, as a direct result of the alleged harassment, her medical condition was exacerbated and that she experienced and continues to experience emotional distress. However, the severity and veracity of plaintiff's claims are measured in large part by plaintiff's e-mail conversations with these fifty-two individuals, and not only by what are likely to be self-serving representations to her treating physicians. Indeed, the content of her communications with these individuals may very well disprove her claims, in whole or in part. The Court and defendants, therefore, must have the opportunity to verify independently from what plaintiff's experts may represent in their reports. Because plaintiff has placed her emotional condition in issue as an element of her claim,

disclosure as to this question is warranted despite any privilege and, thus, she cannot be permitted to use the assertion of privilege as a "sword" rather than merely as "shield."

Plaintiff's communications with these fifty-two individuals and about events dating back several years are essential to a complete and fair resolution not only of her sexual harassment claim, but also of her retaliation, constructive discharge and emotional distress claims. Therefore, plaintiff's motion should be denied.

### 3.    Defendants' Subpoena Does Not Violate the Electronic Communications Privacy Act or Stored Communications Act.

Contrary to plaintiff's contentions, the subpoena does not violate the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.* Section 2701(a) of the Stored Communications Act, enacted under ECPA, prohibits anyone from intentionally accessing *without authorization* a facility through which an electronic communication service is provided; or intentionally exceeding an authorization to access that facility. 18 U.S.C. § 2701. (Emphasis supplied). Subsection (c) expressly provides an exception when the electronic communication is obtained with authorization by the user of the electronic communication service. 18 U.S.C. § 2701(c).

As noted above, even prior to the issuance of the subpoena, we advised plaintiff's counsel that plaintiff's consent would be required in order to obtain the requested communications. Similarly, when the subpoena was served, we asked Yahoo! to send the required User Consent Form so that Plaintiff could execute her affirmative consent to the disclosure.

The cases on which plaintiff relies are distinguishable from the instant case and provide no support for her request to quash the subpoena. Unlike *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2003), in which the defendants subpoenaed an entire company's

e-mail account and obtained access to privileged and personal information of employees not parties to the litigation without any authorization, there has been a clear understanding from the onset of this dispute that Yahoo! would not produce plaintiff's electronic communications without her express consent, or unless ordered by the Court. At no time have defendants attempted to obtain production of these communications without plaintiff's express approval.

Plaintiff's reliance on *Federal Trade Commission v. Netscape Communications Corp.*, 196 F.R.D. 559 (N.D. Cal. 2000) is equally misplaced, because that case deals with the issue of subpoenas served under Section 2703 of ECPA and applicable to governmental entities. The Court in *Federal Trade Commission* found that governmental entities could not rely on subpoenas issued under discovery Rule 45 of the Federal Rule of Civil Procedure in order to access subscriber information; rather, governmental entities must obtain administrative or trial subpoenas authorized by Federal or State statutes and issued in compliance with the strictures built into ECPA. *Federal Trade Commission*, 196 F.R.D. at 561. The *Federal Trade Commission* case is inapplicable on its face and, therefore, has no import to the instant case.

Finally, plaintiff impermissibly relies on the unpublished decision in *In re Subpoena Duces Tecum to AOL, LLC*, 2008 U.S. Dist. LEXIS 39349 (E.D. Va. Apr. 18, 2008), even though that decision has not been designated for citation and is not part of the law of the case. *See* Civil L.R. 3-4. That decision is inapposite because the subpoena at issue there sought production of e-mails of non-party witnesses, stored in AOL's server. Here, plaintiff is a party to this litigation and the electronic communications sought are relevant to the instant litigation.

Simply put, plaintiff cannot allege that the subpoena to Yahoo! violates ECPA when ECPA itself provides that electronic communications can be obtained with the express consent of the subscriber. See 18 U.S.C. § 2701(c). Therefore, Presidente and Gevity have not engaged in any conduct that is actionable under ECPA.

> **4.    Rather Than Quashing the Subpoena to Yahoo!, The Subpoena Can Be Modified, the Electronic Communications Can Be Inspected *In Camera*, and/or Plaintiff Can Obtain A Protective Order As To The Privileged Communications.**

Plaintiff contends that the subpoena must be quashed due to its alleged overbreadth. However, it is generally known that "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district court should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt . . . the court should be permissive." *Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006). Notwithstanding the relevancy of the communications, Defendants have repeatedly encouraged plaintiff to engage in discussion with this firm as to how to protect plaintiff's privacy rights while, at the same time, affording Defendants the ability to obtain the relevant discovery about issues that plaintiff has raised. Since plaintiff's counsel has not attempted to resolve this dispute, this Court should deny plaintiff's motion.

Even if this Court were to determine that the subpoena is overly broad, the Court should not quash the subpoena but modify it to a form which respects both plaintiff's privacy and defendants' discovery rights. *Gonzalez*, 234 F.R.D. at 681 ("in limiting the scope of a subpoena, district courts effectively sustain an objection that the requests are vague, ambiguous, or overbroad in part, and overrules in part"). For example, the subpoena to Yahoo! can be limited in its scope to cover communications with the fifty-

two individuals named in plaintiff's discovery responses. The disclosure of these communications can be inspected *in camera* and plaintiff can apply to the Court for a protective order as to any unrelated privileged communications. Plaintiff cannot assert that her communications with these individuals are privileged since, to our knowledge, none of them involve an attorney, spouse or other persons to whom a privilege might attach. Plaintiff should not be allowed to use her assertion of a privilege as both a sword and a shield since she intends to rely on their testimony to support her claims at trial. Allowing her to do so would amount to an injustice and irreparable prejudice to the parties defending this litigation.

Accordingly, plaintiff's motion should be denied.

## IV.    CONCLUSION

For all of the foregoing reasons, Presidente and Gevity respectfully request that plaintiff's motion be denied.


**LITTLER MENDELSON**
A Professional Corporation
Attorneys for Gevity HR, Inc., Presidente
U.S.A., Inc., Cerveceria Nacional Dominicana,
and Grupo Leon Jimenes.


By:    s/Marlene S. Muraco_____
       Marlene S. Muraco

Dated: June 30, 2008


Firmwide:85672816.2 046687.1081


- 14 -