**NIEDWESKE BARBER**
98 Washington Street
Morristown, NJ 07960
Tele:   973-401-0064
Fax:    973-401-0061
www.n-blaw.com
Attorneys for Plaintiff Jacqueline Hone

**FILED**

2008 JUL -7 P 2: 51

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE HONE, <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENTE U.S.A., INC., CERVECERIA NACIONAL DOMINICANA, GRUPO LEON JIMENES, LTD., ADMINISTAFF, INC., GEVITY H.R., and PHILLIP MORRIS, <br><br> Defendants. | Miscellaneous Case No. CV 08-8007I(HRL) <br><br><br> REPLY DECLARATION OF COUNSEL IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO QUASH THE DISCOVERY SUBPOENA <u>DUCES TECUM</u> SERVED ON YAHOO! BY DEFENDANTS PRESIDENTE U.S.A., INC., AND GEVITY H.R. |

Christopher W. Hager, Esq., being over the age of 18 years, hereby declares pursuant to

28 U.S.C. § 1746 as follows:

1.      I am a Partner in the New Jersey law firm of Niedweske Barber, attorneys for

Plaintiff Jacqueline Hone in this civil action filed pursuant to the New Jersey Law Against

Discrimination (hereinafter "LAD"), and on whose behalf a motion has been filed with this

Court to quash the subpoena duces tecum served by the Defendants on Yahoo!  Pursuant to Civil

Local Rule 7-3(c), I respectfully submit this reply Declaration based on my personal knowledge

of the matters set forth herein.

**A.**    **Defendants' "Meet and Confer"Misrepresentation**

2.    For Your Honor's information, the parties to this action did meet and confer in good faith, pursuant to Federal Rule of Civil Procedure 26(f), before submitting their joint discovery plan to the Court. Exhibit A is one true copy of this finalized document.

3.    As further explained below, and declared in Paragraph 12 of my May 27, 2008, moving Declaration before this Court, I also explicitly conferred with defense counsel about Defendants' Yahoo! subpoena before U.S. Magistrate Judge Salas recommended on May 12, 2008, that a motion to quash be filed because Defendants refused to withdraw or otherwise modify the subpoena.

4.    The instant motion to quash Defendants' discovery subpoena served on Yahoo! is the only motion that has been filed for this relief.

5.    Paragraph 12 of Defense counsel's June 30, 2008, Declaration to this Court misrepresents that a prior "emergency" motion was filed on April 16, 2008, to quash the subpoena in the District Court of New Jersey.

6.    In fact, what I faxed to U.S. Magistrate Judge Salas on April 16th was a letter regarding two (2) discovery issues that had arisen, with one being Defendants' objectionable subpoena to Yahoo! The intent of the letter was to initiate a conference on the issues, which occurred telephonically on May 12, 2008.

7.    In my May 27, 2008, Declaration supporting the instant motion to quash, I declared in Paragraph 12 that "counsel for the parties conferred about Defendants' discovery subpoena to Yahoo! before [the] conference call to Magistrate Salas wherein defense counsel refused to withdraw Defendants' subpoena."

2

8.    Defense counsel's June 30, 2008, Declaration to this Court, and corresponding Memorandum of Points and Authorities, conspicuously ignore this Paragraph in Plaintiff's moving Declaration.

9.    Defense counsel's Declaration also ignores the fact that he represented to the undersigned, during our discussion before Magistrate Judge Salas entered the May 12th conference call, that Defendants would not withdraw or modify the discovery subpoena to Yahoo! in any manner.

10.    He and I specifically discussed the subpoena's scope and intent, to which we objected on Plaintiff's behalf.  The end result of our discussion was that defense counsel advised that the Court would decide whether or not the subpoena would be enforced.

11.    Paragraph 14 of defense counsel's June 30th Declaration misrepresents what occurred in the May 12th conference call with Magistrate Judge Salas regarding the subpoena. While it is true that Magistrate Salas determined that a motion to quash would be necessary, she did not recommend that anything be "re-file[d] with proper notice and only after plaintiff's counsel met and conferred with [Defendants'] office to attempt to resolve this dispute." (emphasis added).

12.    This is because there was nothing more to meet and confer over as defense counsel made it abundantly clear that Defendants were unwilling to modify, much less withdraw, their intrusive and unreasonable subpoena to Yahoo!  That is why Magistrate Judge Salas recommended that a motion be filed, which is precisely what I did.

13.    Declarant hereby respectfully submits to this Court that any "meet and confer" requirement that may have existed before filing the instant motion to quash Defendants'

3

discovery subpoena to Yahoo! was fully satisfied before the May 12, 2008, conference call with

U.S. Magistrate Judge Salas, as set forth above.

I hereby declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

NIEDWESKE BARBER
Attorneys for Plaintiff Jacqueline Hone

*Christopher W. Hager*

Christopher W. Hager

Dated:  July 3, 2008

**NIEDWESKE BARBER**
By: Kevin E. Barber (KEB/8629)
98 Washington Street
Morristown, NJ 07960
Tele:   973-401-0064
Fax:    973-401-0061
www.n-blaw.com
Attorneys for Plaintiff Jacqueline Hone

**MINTZER, SAROWITZ, ZERIS, LEDVA
& MEYERS**
By: Susan R. Engle
2070 Springdale Road, Suite 400
Cherry Hill, NJ  08003
Tele:  856-616-0700
Fax:  856-616-0776
Attorneys for Defendant Administaff, Inc.

**LITTLER MENDELSON**
By: Eric A. Savage (EAS/4709).
One Newark Center, 8th Floor
Newark, NJ  07102
Tele: 973-848-4700
Fax: 973-643-5626
www.littler.com
Attorneys for Defendant Presidente U.S.A., Inc.
and Gevity H.R., Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE HONE, | Civil Action No. 07-5635 (HAA) |
| Plaintiff, | Civil Action |
| v. | **JOINT DISCOVERY PLAN** |
| PRESIDENTE U.S.A., INC., CERVECERIA NACIONAL DOMINICANA, GRUPO LEON JIMENES, LTD., ADMINISTAFF, INC., GEVITY H.R., and PHILLIP MORRIS, | |
| Defendants. | |

1.    **Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.**

Kevin E. Barber/Christopher W. Hager
Niedweske Barber
98 Washington Street
Morristown, NJ  07960
Tele: 973-401-0064
Fax: 973-401-0061

Attorney for Plaintiff, Jacqueline Hone

Eric A. Savage, Esq.
Littler Mendelson
One Newark Center, 8th Floor
Newark, NJ  07102
Tele: 973-848-4700
Fax:  973-643-5626
savage@littler.com
www.littler.com
Attorneys for Defendants Presidente U.S.A., Inc. and Gevity H.R., Inc.

Susan R. Engle, Esq.
Mintzer, Sarowitz, Zeris, Ledva & Meyers
2070 Springdale Road
Suite 400
Cherry Hill, NJ  08003
Tele:  856-616-0700
Fax:  856-616-0776
Attorneys for Defendant Administaff, Inc.

2.    **Set forth a brief description of the case, including the causes of action and affirmative defenses asserted.**

**Plaintiff asserts the following:**  In or about August 2001, Plaintiff Hone began her employment with Defendant Presidente as a Marketing Assistant.  As of August, 2001, Plaintiff Hone's benefits and pay were administered through Defendant Administaff, which had a co-employment agreement with Defendant Presidente.  In or about April 2007, Defendant Presidente entered into a co-employment agreement with Defendant Gevity, which provided Plaintiff Hone with her benefits and salary until her constructive termination on or about July 20, 2007.

During the entirety of her employment with Defendants, Plaintiff Hone was subjected to systematic and continuous quid pro quo and hostile work environment sexual harassment by her supervisors, colleagues and subordinates.  Throughout her employment, comments of a sexual nature were commonplace, such as "look at her ass," "what I wouldn't do to her," "gay men take it in the ass," and other explicit comments regarding Plaintiff Hone's hair, body, clothing, and breasts.  Also commonplace were gestures of a sexual nature, such as feigned sexual acts by male employees.  In or around 2001, Defendant Administaff's Human Resources representative, Rosa Benzant, witnessed the sexual harassment first hand.  She advised Defendant Presidente's Brand Manager, Felix Sencion, that Defendant Presidente could be held liable for the illegal conduct.

Despite Defendants' actual knowledge of the hostile environment, they did nothing. Plaintiff Hone asked her colleagues and subordinates to stop the sexual harassment, but

2

was advised that the atmosphere was part of the "Domincan culture" and she would be well-served to participate, rather than remain distant. When Plaintiff Hone's requests failed, she complained to upper management, including but not limited to Elvira Hernandez, Franklin Leon and Felix Sencion, to intervene on her behalf and stop the harassing environment. She was told that she had a "naturally sexy look" and, therefore, there was nothing that management could do to minimize the hostile work environment. For the next several years, Plaintiff Hone regularly complained about her working environment to Defendants' upper management, all of whom failed to intervene on her behalf. Plaintiff Hone's complaints were the catalyst for the 2003 audit, which was intended to be a review of the entire Defendant Presidente work environment.

In or around August 2003, Defendant GLJ issued a memorandum from its Human Resources Department to all Defendant Presidente employees notifying them that the Hay Group has been retained to evaluate the Company's work environment and management styles. The Hay Group's involvement never came to fruition. As a result of Plaintiff Hone's complaints of sexual harassment, beginning at the end of 2003, she was excluded from various trips sponsored by the Miller Brewing Company, which had recently merged with Defendant Presidente. Plaintiff Hone, the only female manager at Defendant Presidente, was advised that she would not be attending the trips because of the drinking and carousing among the participants.

In or about December 2003, Plaintiff Hone was planning to relocate with Defendant Presidente's corporate headquarters to Miami, Florida where she was told there were would more opportunity for professional growth and development. Immediately prior to her move, Leoni Marti, Plaintiff Hone's Director, told her that he wanted more from their relationship than just professional colleagues. Plaintiff Hone rejected his advances and, immediately thereafter, was told that she would not be moving to Miami. Plaintiff Hone was told that Miami was no longer an option. She was given the ultimatum to remain in New Jersey working in the field or leave the Company. Plaintiff Hone's new job title was Chain Account Manager with substantially more work than previously performed, but for the same pay. Plaintiff Hone complained that her male counterparts were earning substantially more than her for the same or even less work. Her salary was only minimally adjusted. Plaintiff Hone's complaints about the disparate pay were confirmed by audits conducted by Defendant Jimenes and Defendant Phillip Morris, Elvira Hernandez, Leoni Marti, and Miroslava Pestana. Plaintiff Hone's complaints of sexual harassment continued throughout the entirety of her employment with Defendants.

Notwithstanding Plaintiff Hone's complaints, Defendants took no remedial action and the hostile work environment persisted. In retaliation for her complaints, Plaintiff Hone was frozen out by management. From December, 2006 to May, 2007, Plaintiff Hone had no verbal communication or direction from Franklin Leon. Her subordinates, business associates, distributors, suppliers, and clients were given instructions by Defendant Presidente's management which had the effect of bypassing Plaintiff Hone and undermining her authority. Plaintiff Hone would learn of events, which her budget was funding, after the event was already planned and the money spent. This action was

3

in direct contravention to Defendant Presidente's procedure and diminished the monies Plaintiff Hone had available for her own district.

On or about April 26, 2007, Plaintiff Hone filed a complaint with Franklin Leon. On or about May 1, 2007, Franklin Leon offered to meet with Plaintiff Hone, but reneged and referred her complaints to Defendant Gevity. On or about May 1, 2007, Plaintiff Hone underwent a lumpectomy. She remained out of work for only three (3) days because of fear that her absence would leave her vulnerable to continued retaliation and other adverse employment actions. On or about May 8, 2007, Plaintiff Hone met with Defendant Gevity. From June 13, 2007 to July 4, 2007, Plaintiff Hone went on a medical leave of absence. Upon her return, Plaintiff Hone received a memorandum, dated June 28, 2007, which summarized a visit by Franklin Leon regarding stores in Plaintiff Hone's division. The memorandum fabricated various business issues and was a pretext for discrimination and retaliation. In a memorandum, dated July 20, 2007, Plaintiff Hone responded to Mr. Leon's accusations. She charged Defendant Presidente with retaliating against her for disclosing mismanagement, waste of funds, continual harassment, unhealthy work environment, and the Company's unwillingness to take effective action regarding her previous complaints of sexual harassment, whistle blowing, and wage and salary discrimination based on gender.

Plaintiff Hone concluded her memorandum by surrendering to Defendants' goal to have her resign. She recounted the years of intimidation, retaliation, and harassment, which culminated with the destruction of her reputation and credibility. As a result of these intolerable conditions, Plaintiff Hone was forced to terminate her employment, effective July 20, 2007.

**Defendant Presidente U.S.A., Inc. asserts the following:**

Plaintiff became employed by Presidente in August 2001. Plaintiff's benefits and pay were administered in part by Administaff from August 2001 until approximately February 2007, and by Gevity from approximately March 2007 until Plaintiff's resignation on July 20, 2007.

Plaintiff was hired as Marketing Assistant and began working under the supervision of Felix Sencion, Marketing Manager, and Leonidas Marti, the alleged harasser, who was employed as Export Director. In early 2003, Mr. Marti relocated to Miami, Florida, to transfer Presidente's headquarters to Miami, part of the company's plan to standardize its operations across the different markets and restructure its work force. New positions became available as a result of the reorganization, including opportunities for promotion in the New York and New Jersey markets. At her request, Plaintiff was promoted to Visual Merchandising Manager for the New York/New Jersey markets with a substantial salary increase which brought her to a salary level well in excess of that of all other managers in similar positions. After one month in this new position, Plaintiff requested and received a promotion to Regional Manager, a position opened as a result of a new vacancy, and which made her the highest paid manager in that rank. These promotions occurred during the time

4

Plaintiff alleges she was denied opportunities for growth and development as a result of an alleged, and unreported, incident of sexual harassment..

The audit and Hay Group survey to which Plaintiff refers were routine audits and were in no way prompted by or related to Plaintiff or any allegations of sexual harassment or hostile work environment. Plaintiff never complained of sexual harassment during her employment with Presidente. Plaintiff's complaint of April 26, 2007 made generalized statements of unspecified harassment in response to a poor work performance evaluation she received from her supervisor, Mr. Sencion.

Toward the end of 2006, Mr. Sencion and Franklin Leon, Vice President of Export, had become increasingly concerned about the persistent downward trend in New York and New Jersey, the markets under Plaintiff's supervision. During 2006, Mr. Sencion traveled frequently to New York to assist Plaintiff with basic duties required for the execution of the area marketing plan. Mr. Sencion visited these markets in April 2007 and, in evaluating the Company's accounts in the area, found repeated examples of Plaintiff's lack of follow-up with her team members and distributors. Mr. Sencion memorialized his findings in a memorandum, a copy of which was provided to Mr. Leon and Plaintiff via an e-mail dated April 26, 2007. That same day, Plaintiff defended her poor work performance by sending an e-mail addressed only to Mr. Leon, in which she made allegations of harassment and unhealthy work environment. Mr. Leon immediately referred the complaint to Elvira Hernandez, Human Resources Manager. Ms. Hernandez, in turn, referred the complaint to Gevity H.R., Inc., for investigation.

On or about May 8, 2007, Amy Chamberlain, Gevity's consultant in New York, met with Plaintiff and discussed her harassment allegations. Presidente understands that during this meeting, Plaintiff did not mention the allegations now included in the Complaint or identify Mr. Marti as the alleged harasser. Ms. Chamberlain and Erick Torres-Rodriguez, Gevity's Consultant for Presidente, recommended that Plaintiff and Presidente's management personnel meet to discuss Plaintiff's concerns over issues of managerial styles, salary, and general work environment. Based on these recommendations, Mr. Leon, Mr. Sencion, and Ms. Hernandez traveled to New York and met with Plaintiff on May 30, 2007. An action plan was developed, outlining marketing strategies to improve Plaintiff's markets and provide Plaintiff with the necessary support to achieve this goal.

On or about June 12, 2007, Mr. Leon visited Plaintiff's markets and found that Plaintiff was still failing to communicate with staff and distributors, inspect the products in the market, and otherwise follow through on the marketing strategies outlined for her in the May 30 meeting. Mr. Leon memorialized his findings, a copy of which was provided to Plaintiff. On July 20, 2007, citing to Mr. Leon's memorandum of June 12, Plaintiff tendered her resignation in a memorandum which essentially alleged that Mr. Leon's marketing plan was a form of intimidation and discrimination against her. Plaintiff also stated that she was forced to resign as a result of the harassment she was experiencing. Plaintiff did not provide any specific

information about the alleged harassment or the identify of the alleged harasser until her counsel sent a letter demanding $850,000 as settlement for her allegations.

Presidente maintains that Plaintiff voluntarily resigned from her employment with Presidente effective July 20, 2007 and was not constructively discharged. Presidente further maintains that Plaintiff was not subjected to *quid pro quo* or hostile work environment sexual harassment or retaliation and denies having had any actual or constructive knowledge about any conduct which could give rise to liability under the New Jersey Law Against Discrimination.

**Defendant Gevity H.R., Inc. asserts the following:**

Gevity admits that it entered into a Professional Services Agreement with Presidente effective in or about March 2007 to provide human resources services to Presidente. Gevity's services include the administration of Presidente's payroll, management of employee benefits and employer liability. Gevity was not Plaintiff's employer, as that term has been defined under the applicable statutes and case law on which Plaintiff's claims are based.

Gevity administered Plaintiff's pay and benefits, as well as provided advice relative to Plaintiff's allegations of harassment and "unhealthy work environment." In or about May 1, 2007, Erick Torres-Rodriguez, Gevity's H.R. consultant for Presidente, provided advice to Elvira Hernandez, Defendant Presidente's H.R. Manager, relative to Plaintiff's complaint. On May 8, 2007, Amy Chamberlain, a Gevity H.R. consultant in New York, met with Plaintiff to discuss her complaint. During the meeting, Ms. Chamberlain asked Plaintiff specifically about sexual harassment, but Plaintiff failed to identify the alleged harasser and did not mention the allegations now stated in the Complaint. The next day, Ms. Chamberlain sent an e-mail to Plaintiff advising her that, based on their discussion, Plaintiff's allegations had been classified as being relative to perceived gender-based inequalities in wage and salary, unsupportive relationship with the marketing director, as well as minimal interaction with Plaintiff's direct manager. Further, Ms. Chamberlain noted, "I did inquire about sexual harassment however, your response, in my assessment, would not fit the classification of it." Mr. Torres-Rodriguez thereafter was notified of Ms. Chamberlain's findings and immediately notified Ms. Hernandez. Mr. Torres-Rodriguez suggested to Ms. Hernandez about follow-up with Plaintiff about her other concerns and Plaintiff's poor work performance.

Gevity also investigated another incident in which Plaintiff reported feeling threatened by Pedro Linares, a Presidente employee under her supervision. Gevity understands that on or about May 11, 2007, Plaintiff reported to Ms. Hernandez that Mr. Linares had been verbally aggressive towards her during a staff meeting and asked that he be terminated. Ms. Hernandez contacted Mr. Torres-Rodriguez and asked him to investigate the incident. Mr. Torres-Rodriguez interviewed the employees who witnessed the incident, all of whom confirmed that Mr. Linares had raised his voice but did not feel that his conduct had been threatening toward

6

Plaintiff.  Mr. Torres-Rodriguez advised Ms. Hernandez that Mr. Linares' conduct did not warrant his discharge, although it is Gevity's understanding thatMr. Linares was counseled about the incident.

On or about July 23, 2007, Gevity received notification from Presidente that Plaintiff had resigned from her employment with Presidente.  As part of the normal course of business, Gevity processed Plaintiff's termination as such.

**Defendant Administaff, Inc. asserts the following:**

Administaff is a Professional Employer Organization, which serves as an off-site, full-service human resources department for small and medium-sized businesses across the nation.  Administaff served as the off-site human resources department for Presidente USA, Inc. from January 1, 2001 through March 31, 2007.  Administaff denies the plaintiff's allegations and is in the process of investigating this matter.  Also, Administaff contends that much of the alleged conduct referred to by the plaintiff is time barred and recovery is not available for the plaintiff.

3.  **Has this action been:  Settled:**__No__    **Discontinued:** ___No___

**If so, has there been a Stipulation/Dismissal filed?**  N/A

**Yes**_____    **No**_____

4.  **Have settlement discussions taken place?  Yes**_X___  **No** _____

**If so, when?** _____October 16, 2007 settlement demand and subsequent conversations_

**(a)  What was Plaintiff's last demand?**

   (1) **Monetary demand:** _____$850,000.00_____

   _____

   (2) **Non-monetary demand:** __N/A_____

**(b)  What was Defendant Presidente U.S.A., Inc.'s last offer?**

   (1) **Monetary offer:** $_____
   (2) **Non-monetary offer:** _____

**(c)  What was Defendant Gevity H.R., Inc.'s last offer?**

   (1) **Monetary offer:** $_____

          **(2) Non-monetary offer:** _____

    **(d) What was Defendant Administaff, Inc.'s last offer?**

          **(1) Monetary offer:  $**_____
          **(2) Non-monetary offer:** _____

5.    **The parties <u>have</u> exchanged the information required by <u>Fed.R.Civ.P.</u> 26 (a)(1).  If not, state the reason therefore.**

The parties have agreed to exchange their Rule 26 initial disclosure statements in person at the status conference on March 19, 2008.

6.    **Explain any problems in connection with completing the disclosure required by Fed.R.Civ.P. 26(a)(1).**

N/A

7.    **The parties <u>have not</u> conducted discovery other than the above disclosures.  If so, describe.**

N/A

8.    **The parties <u>have</u> met pursuant to <u>Fed.R.Civ.P.</u> 26(f).**

**(a) If not, state the reason therefore.**

_____

**(b) If so, state the date the meeting and the persons in attendance.**

The parties convened telephonically on March 14, 2008.  In attendance were Eric Savage, Esq., Kevin Barber, Esq., Susan Engle, Esq., and a representative of Gevity.

9.    **The following <u>is</u> a proposed joint discovery plan.**

**(a) Discovery is needed on the following subjects:**

Discovery is needed on the issues of whether the Defendants discriminated and/or retaliated against Plaintiff or subjected Plaintiff to a hostile work environment, and the amount of damages, if any, suffered by Plaintiff.

Defendants assert that discovery is also needed on the relationship between Gevity and Presidente and between Administaff and Presidente, inasmuch as both Gevity and Administaff functioned as professional employee organizations and not as joint

employers. Either or both of them may seek summary judgment based on their lack of an employer relationship with plaintiff.

Discovery may also be necessary with respect to possible motions to dismiss for lack of personal jurisdiction against defendants Cerveceria Nacional Dominicana and Grupo Leon Jimenes, Ltd., if and when they are served.

**(b) Discovery <u>should not</u> be conducted in phases or be limited to particular issues. Explain.**

Defendants believe that after plaintiff's deposition is concluded, Gevity and Administaff should be deposed so that the issue of their possible liability can be developed in full and they can decide whether to make a motion for summary judgment so as to avoid the possible need to participate in extended and costly depositions in a case in which they may not remain as parties.

In addition, if and when Cerveceria Nacional Dominicana and/or Grupo Leon Jimenes are served, one or both of those companies may seek dismissal based on, among other things, lack of personal jurisdiction. If that is the case, defendants contend that discovery against those entities should be limited to threshold issues so that a motion can be presented to and decided on by the Court, thereby possibly avoiding the need for them to participate in extended and costly depositions in a case in which they may not remain as parties

**(c) Maximum of <u>25</u> Interrogatories by each party to each other party.**

**(d) Maximum of _____ Depositions to be taken by each party.**

**(e) Plaintiff's expert report due on <u>December 31, 2008.</u>**

**(f) Defendants' expert report due on <u>February 28, 2009.</u>**

**(g) Motions to amend or to add parties to be filed by <u>May 19, 2008.</u>**

**(h) Dispositive motions to be served within <u>60</u> days of completion of discovery.**

**(i) Factual discovery to be completed by <u>January 31, 2009.</u>**

**(j) Expert discovery to be completed by <u>November 30, 2008.</u>**

**(k) Set forth any special discovery mechanism or procedure requested, including data preservation orders or protective orders:**

**(l) A pretrial conference may take place on <u>December 15, 2008.</u>**

**(m) Trial date <u>May 1, 2009.</u>**

9

10. **Do you anticipate any discovery problem(s)? Yes_____ No _____**

    **If so, explain.**

    There exists special issues regarding the parties' ability to conduct pre-trial discovery. Defendants Cerveceria Nacional Dominicana and Grupo Leon Jimenes, Ltd., neither of which have been served, operate only in the Dominican Republic. Leonidas Marti, whom Plaintiff has identified as the alleged harasser, has not been employed by Defendant Presidente or any of the foreign entities since June 17, 2005 and resides in the Dominican Republic. The Dominican Republic is not a signatory to either the Hague Convention on the Service Abroad or the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters. Therefore, the foreign entities and Mr. Marti, as a third party, may not be subject to the laws of the Dominican Republic from service of process and compulsion to comply with any pre-trial discovery demands either of the parties may serve upon them.

    Similarly, there are a number of witnesses who reside out of state. Accordingly, it is anticipated that numerous out-of-state depositions will be necessary in this case.

11. **Do you anticipate any special discovery needs (i.e., videotape/telephone depositions. Problems with out-of-state witnesses or documents, etc.)? Yes_____ No _____**

    **If so, explain.**

    The majority of the witnesses in this case reside out of state and out of the country. Defendants Grupo Leon Jimenes and Cerveceria Nacional Dominicana are Dominican Republic companies and, therefore, it is anticipated that Plaintiff will perform numerous out-of-state depositions; *see also* Answer to Question No. 10.

12. **State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise), mediation (pursuant to Local Civil Rule 301.1 or otherwise), appointment of a special master or other special procedure. If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pre-trial disclosures, after completion of depositions, after disposition of dispositive motions, etc).**

    This case is not appropriate for voluntary arbitration. Given the egregious nature of the acts by Defendants, discovery is needed.

13. **Is this case appropriate for bifurcation? Yes_____ No _____**

Gevity and Administaff believe that bifurcation is appropriate for the reasons set forth in Section 9(b).

In addition, Presidente intends to seek severance of any punitive damages claims at trial pursuant to N.J.S.A. 2A:15-5.9 *et seq.* and in particular, sections 15-5.12(c) and 15:5-13 (a) – (b).

Plaintiff asserts that this matter is not appropriate for bifurcation.

14. **An interim status settlement conference (with clients in attendance), should be held on September 18, 2008.**

15. **We do not consent to the trial being conducted by a Magistrate Judge?**

Respectfully Submitted,

**NIEDWESKE BARBER**

/s/ Kevin E. Barber
Attorneys for Plaintiff
Dated:_____        Jacqueline Hone

**LITTLER MENDELSON**

/s/ Eric A. Savage
Attorneys for Defendant s
Dated:_____        Presidente U.S.A., Inc. and Gevity H.R., Inc.

**MINTZER, SAROWITZ, ZERIS, SAROWITZ ZERIS, LEDVA & MEYERS**

/s/ Susan R. Engle
Attorneys for Defendant
Dated:_____        Administaff, Inc.

11